IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENT HARRIS, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No. 15-3689 |
| CITY OF PHILADELPHIA, et al., | : | |
| Defendants. | : | |

<u>MEMORANDUM</u>

**ROBERT F. KELLY, Sr. J.**                                                                 **MARCH 18, 2016**

Presently before this Court is Defendant, City of Philadelphia's ("Defendant"), "Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) as to the Amended Complaint" and Plaintiff, Vincent Harris' ("Plaintiff"), Response in Opposition. For the reasons set forth below, this Motion is denied.

**I.      BACKGROUND**

On July 5, 2015, Plaintiff initiated this lawsuit by filing a Complaint against the City of Philadelphia and two of its police officers. (Doc. No. 1.) Defendant filed a Motion to Dismiss the Complaint on July 24, 2015. (Doc. No. 2.) In response to the Defendant's motion, Plaintiff filed an Amended Complaint on August 7, 2015. (See Am. Compl; Doc. No. 4.) Defendant filed an Answer to the Amended Complaint on September 15, 2015. (Doc. No. 10.)

This case arises out of an incident that occurred on June 3, 2013, near 52nd Street and Baltimore Avenue in Philadelphia. (Am. Compl ¶ 12.) It is alleged that Defendants, Officer Vitanovitz and Officer Robert Campbell of the Philadelphia Police Department, exercised

excessive force in effectuating the wrongful arrest of Plaintiff.  (Id. ¶¶ 13-20.)  During the incident, Plaintiff claims that he was struck multiple times with a baton and was tased, which resulted in serious injuries requiring surgical intervention.  (Id. ¶¶ 16-20, 22.)  Plaintiff was ultimately charged with possession of a controlled substance, resisting arrest, disorderly conduct, and possession of alcoholic beverages; however, these charges were dropped on October 25, 2013.  (Id. ¶ 23.)

Presently before this Court is Defendant's Motion for Judgment on the Pleadings.  (Doc. No. 20.)  Defendant contends that Plaintiff has failed to state a claim against it for two reasons: (1) Plaintiff has not pleaded any facts which suggest that a municipal policy or custom caused his injury; and (2) Plaintiff has failed to allege any conduct by a municipal policymaker.  (See Def.'s Mot. for Judg. on Pleads. at 3-7.)

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings."  Under Rule 12(c), judgment on the pleadings may be granted "only if, viewing all the facts in the light most favorable to the nonmoving party, no material issue of fact remains and the moving party is entitled to judgment as a matter of law."  Knepper v. Rite Aid Corp., 675 F.3d 249, 257 (3d Cir. 2012) (citing Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008)); see also Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).  When a motion for judgment on the pleadings is based upon the defense that a party has failed to state a claim, it is analyzed under the same standards applied to a Rule 12(b)(6) motion.  See Revell v. Port Auth. of N.Y. & N.J., 598 F.3d 128, 134 (3d Cir. 2010) (citing Turbe v. Gov't of the V.I., 938 F.2d 427, 428 (3d Cir. 1991)).  "The only notable difference between these two standards is that the court, for a motion

on the pleadings, reviews not only the complaint but also the answer and written instruments attached to the pleadings." Brautigam v. Fraley, 684 F. Supp. 2d 589, 591–92 (M.D. Pa. 2010); see also Phillips v. Transunion, LLC, No. 12-1058, 2012 WL 1439088, at *3 (E.D. Pa. Apr. 25, 2012). The general rule is that "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 97 n.6 (3d Cir. 2010) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). A limited exception exists for documents that are "integral to or explicitly relied upon in the complaint." Id.

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the complaint must be construed in the light most favorable to the plaintiff. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011) (citing In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010)). Federal Rule of Civil Procedure 8(a)(2) requires "only 'a short and plain statement of the claim showing the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

"[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." Id. In Twombly, the United States Supreme Court ("Supreme Court") "set forth the 'plausibility' standard for overcoming a motion to dismiss and refined the approach in Iqbal." Burtch, 662 F.3d at 220 (citing Twombly, 550 U.S. at 557; Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009)). In other words, Rule 8 requires that a complaint contain factual allegations

3

that, taken as a whole, render the plaintiff's entitlement to relief plausible. W. Penn, 627 F.3d at 98. "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Phillips v. Cnty. of Alleg., 515 F.3d 224, 234 (3d Cir. 2008); Twombly, 550 U.S. at 556).

When deciding the sufficiency of a complaint "courts should disregard the complaint's legal conclusions and determine whether the remaining factual allegations suggest that the plaintiff has a plausible - as opposed to merely conceivable - claim for relief." Id. (citing Iqbal, 129 U.S. at 1949-50; Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)). Under both Twombly and Iqbal, a court must take the following three steps in order to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify the allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief.

Burtch, 662 F.3d at 221 (quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010)). "It is, of course, true that judging the sufficiency of a pleading is a context-dependent exercise." W. Penn, 627 F.3d at 98 (citing Iqbal, 129 S. Ct. at 1950; Twombly, 550 U.S. at 567-68; Phillips, 515 F.3d at 232).

### III. DISCUSSION

The municipal liability claims at issue in the instant Motion arise under 42 U.S.C. § 1983. Under § 1983 "a municipality cannot be held liable solely because it employs a tortfeasor — or, in other words, a municipality cannot be held liable . . . on a respondeat superior theory."

4

Monell v. Dept. of Soc. Serv., 436 U.S. 658, 691 (1978). Rather, liability under § 1983 attaches to a municipality only where the "government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694. Thus, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). A municipal policy is a " statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers." Id. at 690. A custom, on the other hand, "is an act 'that has not been formally approved by an appropriate decision-maker,' but that is 'so widespread as to have the force of law.'" Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Bd. of the Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997)).

When dealing with either a custom or a policy, the municipality's liability can be predicated "only [upon] acts for which the municipality itself is actually responsible." City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988). "[O]nly those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability." Id. (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)). As the Supreme Court summarized, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing . . . municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985) (plurality opinion).

Municipality liability under § 1983 may also relate to the training of police officers in limited circumstances. Canton, 489 U.S. at 388. However, this liability arises "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police

5

come into contact." Id. The Supreme Court explained this limited scope of liability for failure to train:

> It may seem contrary to common sense to assert that a municipality will actually have a policy of not taking reasonable steps to train its employees. But it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

Id. at 390. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bryan Cty., 520 U.S., at 410. "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick v. Thompson, 563 U.S. 51, 61 (2011) (citing Bryan Cty., 520 U.S. at 407). Also, "the identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury." Canton, 489 U.S. at 391.

### A. Causal Link Between Policy or Custom and Alleged Injury

Here, Defendant contends that Plaintiff has failed to state a claim against it for two reasons. First, Defendant argues that Plaintiff has not pleaded any facts which suggest that a municipal policy or custom caused his injury. (See Def.'s Mot. for Judg. on Pleads. at 3-6.) Defendant argues that Plaintiff just makes conclusory allegations throughout his Amended Complaint. (Id. at 4.) Defendant acknowledges that Plaintiff cites the 2015 U.S. Department of Justice, Office of Community Policing Services Report[1] ("DOJ Report") but argues that this

---

[1] See George Fachner & Steven Carter, Washington, DC: Office of Community Oriented Policing Services, Collaborative Reform Initiative: An Assessment of Deadly Force in the Philadelphia Police Department (2015) [hereinafter An Assessment of Deadly Force in the PPD]. The DOJ Report was initiated after Philadelphia Police

6

report solely addressed deficiencies regarding Defendant's use of deadly force. (Id. at 4-5.) Furthermore, Defendant contends that Plaintiff does not directly address how the deficiencies found in the report caused his injuries. (Id. at 5-6.) Ultimately, Defendant is arguing that this alleged assault and wrongful arrest could have occurred regardless of the policies that Plaintiff cites especially since those policies only relate to "deadly force." (Id. at 5.)

On the other hand, Plaintiff contends that he has sufficiently pleaded causation at this stage in the case. Plaintiff alleges that his injuries were a result of the policies regarding the "use of force, including the use of batons and electronic control weapons." (See Pl's Resp. in Opp'n to Def.'s Mot. for Judg. on Pleads. at 5-6; see also Am. Compl ¶ 9.) Plaintiff goes on to reference the DOJ Report that found numerous deficiencies in Defendant's policies. (Id.) Plaintiff points out that this report goes on to address and make recommendations for deficiencies in Defendant's training and supervision regarding the use of force, including the use of batons and electronic weapons. (Id. at 6.)

We agree with Plaintiff that he has sufficiently pleaded causation at this early stage in the case. Assuming the factual allegations as true, Plaintiff was falsely arrested and subject to excessive force by two police officers who used batons and electronic weapons to inflict damage. (Am. Compl ¶¶ 13-20.) Contrary to Defendant's contention, the DOJ Report did not address just the use of deadly force. See An Assessment of Deadly Force in the PPD, supra note 1, at pp. 79-87. Rather, the DOJ Report found deficiencies in Defendant's training programs and policies

---

Commissioner Charles C. Ramsey ("Ramsey") requested technical assistance from the U.S. Department of Justice ("DOJ") Office of Community Oriented Policing Services ("COPS Office") through the Collaborative Reform Initiative. Id. at p. 1. Ramsey's request was in response to several fatal officer involved shootings within Philadelphia's Police Department ("PPD"). Id. It "is a technical report on the current and future states of deadly force policy, training, investigations, and practice in the PPD." Id. "The assessment was conducted by an interdisciplinary team of researchers, analysts, and subject matter experts over a 12-month period." Id. The "report provides the PPD with findings and recommendations to help the department improve with respect to use of force." Id. at p. vii.

7

regarding the use of batons and electronic control weapons.  Id.  Plaintiff cites this as proof of Defendant's knowledge of its training deficiencies.  (Am. Compl ¶ 9.)

Plaintiff has pleaded sufficient facts to make a plausible claim that Defendant was deliberately indifferent as it pertains to its training program and policies.  Specifically, Plaintiff alleges in his Amended Complaint that:

1. "Defendant, City of Philadelphia was deliberately indifferent to the need to . . . (c) train its police officers in the appropriate exercise of police powers; and (d) properly train, supervise, and discipline officer with regard to such police practices."  (Am. Compl ¶ 41.)

2. "The City of Philadelphia was deliberately indifferent to the need for more or different training, supervision, investigation, or discipline in the areas of . . . (a) use of force by police, including, but not limited to, the use of batons and electronic control weapons; [and] (b) exercise of police powers."  (Id. ¶ 43.)

3. "The foregoing acts, omissions, systemic deficiencies, and deliberate indifference to the danger or harm to citizens like the Plaintiff and the need for more or different training, investigation, and discipline are policies and customs of the City of Philadelphia have caused police officers, including Defendant Philadelphia Police Officers in this case, to believe that they can violate the rights of citizens, with impunity, including the use of fraud and falsehood and to believe that such conduct would be honestly and properly investigated, all with the foreseeable result that officers are more likely to violate the constitutional rights of citizens."  (Id. ¶ 45.)

    4. "The obvious danger that the Defendant City of Philadelphia created is evident in the multiple incidents in which officers have used excessive force and, more specifically, inappropriately used their batons and caused injury, including, but not limited to, the incident that occurred on or about June 4, 2012 involving Officers Brian E. Gordon, John R. Pasquarello, William Smith, and Mike Smith, the incident which occurred on or about September 29, 2012 involving Officer William Gress, and the incident which occurred in May of 2013 involving Officers Sean McKnight and Kevin Robinson." (Id. ¶ 11.)

These are not naked assertions like the examples Defendant cites in its motion. See Saleem v. Sch. Dist. of Phila., No. 12-3193, 2013 WL 5763206, at *3 (E.D. Pa. Oct. 24, 2013) (dismissing Monell claim under Rule 12(b)(6) because plaintiff pled "the 'phraseology' of an alleged policy, practice, procedure, custom and endorsement . . . but [failed to plead] supporting facts"); Niblack v. Murray, No. 12-6910, 2013 WL 4432081, at *8-9 (D.N.J. Aug. 14, 2013) (dismissing Monell claim because "[p]laintiff fails to allege any facts to support his naked assertion of an unlawful municipal policy or custom"); Torres v. City of Allentown, No. 07–1934, 2008 WL 2600314, at *5 (E.D. Pa. June 30, 2008) (dismissing Monell claim for failure to plead specific facts).

Plaintiff's assertions are specific and are supported by facts found in the DOJ Report cited in his Amended Complaint. (Am. Compl ¶ 9.) This case is akin to A v. Nutter, 737 F.Supp.2d 341, (E.D. Pa. 2010). In Nutter, children in the care of the city's Department of Human Services ("DHS"), and their natural parents, brought a putative class action claim under § 1983 against the City of Philadelphia, the Commonwealth of PA, and their officials, alleging

that their Fourteenth Amendment rights have been violated by a twenty-two year pattern and practice of unsafe child welfare policies. Id. at 347-48. The court refused to dismiss the Monell claim because plaintiffs alleged a longstanding lack of compliance with child safety standards despite documented knowledge by municipal decision-makers of areas of concern. Id. at 361-63.

Here, the DOJ Report, amongst numerous other findings, found that Defendant's defensive tactics training, which includes training for batons and electronic weapons, needed to be updated to include in-service training. (See Pl's Resp. in Opp'n to Def.'s Mot. for Judg. on Pleads. at 8.) The DOJ Report further concluded that inadequate training in defensive tactics may make an officer more likely to resort to excessive force. (Id.) Plaintiff also references three prior incidents of excessive force by Defendant's police officers. (Am. Compl ¶ 11.) The Plaintiff's assertions taken along with the DOJ Report findings create a plausible claim for municipality liability under § 1983 pertaining to the training of its police officers. Accepting the factual allegations as true, the municipal policy makers were on actual or constructive notice of its deficiencies in its training program and policies that resulted in its police officers violating citizen's constitutional rights, but chose, nevertheless, to retain the program.

**B. Conduct of the Municipal Policymaker**

Second, Defendant argues that Plaintiff has failed to allege any conduct by a municipal policymaker as required for a Monell claim. (See Def.'s Mot. for Judg. on Pleads. at 3-7.) Plaintiff asserts that the following paragraphs sufficiently allege such action:

> 1. "At all relevant times, Defendant City of Philadelphia acted through its employees and agents and high level, responsible policy makers, including without limitation, Mayor Michael Nutter, the Philadelphia Police Department, Police Commissioner Charles H. Ramsey, First Deputy

      Commissioner Field Operations Richard Ross, Jr., Deputy Commissioner Organizational Services, Strategy, and Innovations Nola Joyce, Deputy Commissioner Patrol Operations Kevin Bethel, Deputy Commissioner Specialized Investigations and Homeland Security Thomas Wright, Deputy Commissioner Office of Professional Responsibility Denise Turpin, Deputy Commissioner Organizational Services Christine Coulter, and/or other individuals who promulgated policies and procedures and/or acquiesced in a longstanding custom or practice whereby such individuals knew of the danger posed by the failures set forth in the following paragraph[s] and deliberately chose not to pursue a different course of action and/or acquiesced in a longstanding practice of such failures."  (Am. Compl ¶ 41.)

2. "The deficiencies in the Defendant City of Philadelphia's policies and practices regarding the use of force, including the use of batons and electronic control weapons are outlined, in part, in the 2015 U.S. Department of Justice, Office of Community Oriented Policing Services (hereinafter the "DOJ Report").  <u>See</u> George Fachner & Steven Carter, Washington, DC: Office of Community Oriented Policing Services, Collaborative Reform Initiative: <u>An Assessment of Deadly Force in the Philadelphia Police Department</u> (2015) (<u>Id.</u> ¶ 41.)

We agree that these allegations are sufficient at this stage in the case.  Plaintiff's allegations differ greatly than those that were dismissed in the cases dealing with <u>Monell</u> claims cited by Defendant.  In <u>McTernan v. City of York, Pa.</u>, the United States Court of Appeals for

the Third Circuit ("Third Circuit") found the plaintiff's Monell claim was insufficient because, among other reasons:

> [t]here [was] no allegation that either the Mayor or the Police Chief were aware of, let alone directed, the restrictions or participated in formulating traffic abatement strategies at the Clinic. Nor do the allegations support, indirectly, such an inference. The complaint alleges nothing more than directives issued ad hoc by individual officers, without reference to any formal administrative or policy channels. Hence, the allegations are deficient.

564 F.3d 636, 658-59 (3d Cir. 2009); see also Rees v. Office of Children & Youth, 473 F. App'x 139, 143-44 (3d Cir. 2012) (affirming dismissal of Monell claim for failing to "link the alleged offending policies or customs to anyone . . . who had policy-making authority"). Those facts are not analogous to the facts of the case before us. Plaintiff alleges that the municipal policy makers, including former Police Commissioner Ramsey, knew of failures in their training program, as found in the DOJ Report, and deliberately choose to retain such inadequate programs. (Am. Compl ¶¶ 8-9.) We agree with Plaintiff that he has sufficiently alleged a link between the policy makers and a deficient policy and has not simply made boilerplate recitations of the elements of a cause of action under Monell. See Nutter, 737 F. Supp. 2d at 362 (finding that "plaintiffs have adequately plead that municipal officials acquiesced in existing [deficient] DHS customs, and this is sufficient to state a claim under Monell"). Therefore, Defendant's Motion for Judgment on the Pleadings is denied as Plaintiff has pleaded sufficient facts for a plausible Monell claim.

## IV.   CONCLUSION

For the above mentioned reasons, we conclude that Defendant's Motion for Judgment on the Pleadings is denied because Plaintiff has sufficiently pleaded facts that render entitlement of relief under a Monell claim plausible.

An appropriate Order follows.